1

2

3

4

5

6

7

8  UNITED STATES DISTRICT COURT
   WESTERN DISTRICT OF WASHINGTON
9  AT TACOMA

10  OTTO RAAB,

11            Plaintiff,                  CASE NO. 10cv5487-RBL-JRC

12      v.                                REPORT AND
                                          RECOMMENDATION ON
13  MICHAEL J. ASTRUE, Commissioner       PLAINTIFF'S COMPLAINT
    of the Social Security Administration,
14                                        Noting Date: November 18, 2011
15            Defendant.

16

17      This matter has been referred to United States Magistrate Judge J. Richard

18  Creatura pursuant to 28 U.S.C. § 636(b)(1) and Local Magistrate Judge Rule MJR

19  4(a)(4), and as authorized by Mathews, Secretary of H.E.W. v. Weber, 423 U.S. 261,

20  271-72 (1976). This matter has been fully briefed. (See ECF Nos. 15, 25, 28).

21      In this matter, the ALJ failed to evaluate properly the evidence from acceptable

22  medical sources as well as the assessment by Certified Physician Assistant Osborn. Based

23  on these reasons and the relevant record, the undersigned recommends that this matter be

24

reversed and remanded to the Administration for further consideration, pursuant to sentence four of 42 U.S.C. § 405(g).

BACKGROUND

Plaintiff, OTTO RAAB, was born in 1958 and was forty-five years old on his alleged disability date of March 15, 2004 (Tr. 80). He listed his usual occupations as welder, fabricator and truck driver (Tr. 156). Most recent to his application for benefits, he worked as a dishwasher for about a month in October, 2002 (id.). This job ended due to a disagreement (id.). He alleged disability due to impairments regarding his arms, back and one leg (id.). He alleged that he had a heart murmur, mood swings and back pain, and also alleged that his legs go numb (Tr. 157).

PROCEDURAL HISTORY

In May, 2004, plaintiff applied for disability insurance benefits and social security income benefits (Tr. 83-85, 500-02). His claims were denied initially and following reconsideration (Tr. 39-40, 495-96). Plaintiff's initial requested hearing was held before Administrative Law Judge Dan R. Hyatt ("the ALJ") on July 24, 2007, and was held over for further development of the record (Tr. 545-50). Plaintiff's second administrative hearing, at which he testified, was held on January 24, 2008 (Tr. 533-50). Finally, plaintiff had a third administrative hearing, at which he and a vocational expert testified before the ALJ on May 6, 2008 (Tr. 517-32).

On May 22, 2008, the ALJ issued a written decision in which he concluded that plaintiff was not disabled (Tr. 13-28). On May 12, 2010, the Appeals Council denied plaintiff's request for review, making the written decision by the ALJ the final agency

decision subject to judicial review (Tr. 5-7). See 20 C.F.R. § 404.981. Plaintiff filed a complaint seeking judicial review in July, 2010 (see ECF No. 3). In his opening brief, plaintiff contends that the ALJ: (1) erroneously found plaintiff only partially credible; (2) erred by failing to discuss the weight given to some of the medical evidence; (3) erred by failing to give sufficient reasons for not accepting the opinions of examining sources; (4) erred in determining whether or not plaintiff's impairments were severe at Step two of the sequential disability evaluation; (5) failed to give legally sufficient reasons for discounting the lay witness statements; (6) erred by failing to account properly for all of plaintiff's limitations; and, (7) relied improperly on vocational expert testimony (see ECF No. 15, pp. 5-23).

## STANDARD OF REVIEW

Plaintiff bears the burden of proving disability within the meaning of the Social Security Act (hereinafter "the Act"). Meanel v. Apfel, 172 F.3d 1111, 1113 (9th Cir. 1999); see also Johnson v. Shalala, 60 F.3d 1428, 1432 (9th Cir. 1995). The Act defines disability as the "inability to engage in any substantial gainful activity" due to a physical or mental impairment "which can be expected to result in death or which has lasted, or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). Plaintiff is disabled under the Act only if plaintiff's impairments are of such severity that plaintiff is unable to do previous work, and cannot, considering the plaintiff's age, education, and work experience, engage in any other substantial gainful activity existing in the national economy. 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B); see also Tackett v. Apfel, 180 F.3d 1094, 1098-99 (9th Cir. 1999).

Pursuant to 42 U.S.C. § 405(g), this Court may set aside the Commissioner's denial of social security benefits if the ALJ's findings are based on legal error or not supported by substantial evidence in the record as a whole. Bayliss v. Barnhart, 427 F.3d 1211, 1214 n.1 (9th Cir. 2005) (*citing* Tidwell v. Apfel, 161 F.3d 599, 601 (9th Cir. 1999)). "Substantial evidence" is more than a scintilla, less than a preponderance, and is such "'relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Magallanes v. Bowen, 881 F.2d 747, 750 (9th Cir. 1989) (*quoting* Davis v. Heckler, 868 F.2d 323, 325-26 (9th Cir. 1989)); see also Richardson v. Perales, 402 U.S. 389, 401 (1971). The Court "'must independently determine whether the Commissioner's decision is (1) free of legal error and (2) is supported by substantial evidence.'" See Bruce v. Astrue, 557 F.3d 1113, 1115 (9th Cir. 2006) (*citing* Moore v. Comm'r of the Soc. Sec. Admin., 278 F.3d 920, 924 (9th Cir. 2002)); Smolen v. Chater, 80 F.3d 1273, 1279 (9th Cir. 1996).

However, "regardless whether there is enough evidence in the record to support the ALJ's decision, principles of administrative law require the ALJ to rationally articulate the grounds for h[is] decision and [the courts] confine our review to the reasons supplied by the ALJ." Steele v. Barnhart, 290 F.3d 936, 941(7th Cir. 2002) (*citing* SEC v. Chenery Corp., 318 U.S. 80, 93-95 (1943) (other citations omitted)); see also Stout v. Commissioner of Soc. Sec., 454 F.3d 1050, 1054 (9th Cir. 2006) ("we cannot affirm the decision of an agency on a ground that the agency did not invoke in making its decision") (citations omitted); Griemsmann v. Astrue, 147 Soc. Sec. Rep. Service 286, 2009 U.S. Dist. LEXIS 124952 at *9 (W.D. Wash. 2009) (*citing* Blakes v. Barnhart, 331 F.3d 565,

569 (7th Cir. 2003)). For example, "the ALJ, not the district court, is required to provide specific reasons for rejecting lay testimony." Stout v. Commissioner of Soc. Sec., 454 F.3d 1050, 1054 (9th Cir. 2006) (*citing* Dodrill v. Shalala, 12 F.3d 915, 919 (9th Cir. 1993)).

DISCUSSION

I.     The ALJ failed to review properly some of the medical evidence from
       acceptable medical sources.

"A treating physician's medical opinion as to the nature and severity of an individual's impairment must be given controlling weight if that opinion is well-supported and not inconsistent with the other substantial evidence in the case record." Edlund v. Massanari, 2001 Cal. Daily Op. Srvc. 6849, 2001 U.S. App. LEXIS 17960 at *14 (9th Cir. 2001) (*citing* SSR 96-2p, 1996 SSR LEXIS 9); see also 20 C.F.R. § 416.902 (non-treating physician is one without "ongoing treatment relationship"). The decision must "contain specific reasons for the weight given to the treating source's medical opinion, supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the [] opinion." SSR 96-2p, 1996 SSR LEXIS 9. However, "[t]he ALJ may disregard the treating physician's opinion whether or not that opinion is contradicted." Batson v. Commissioner of Social Security Administration, 359 F.3d 1190, 1195 (9th Cir. 2004) (*quoting* Magallanes v. Bowen, 881 F.2d 747, 751 (9th Cir. 1989)).

The ALJ must provide "clear and convincing" reasons for rejecting the uncontradicted opinion of either a treating or examining physician or psychologist. Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1995) (*citing* Baxter v. Sullivan, 923 F.2d 1391, 1396 (9th Cir. 1991); Pitzer v. Sullivan, 908 F.2d 502, 506 (9th Cir. 1990)). Even if a treating or examining physician's opinion is contradicted, that opinion "can only be rejected for specific and legitimate reasons that are supported by substantial evidence in the record." Lester, supra, 81 F.3d at 830-31 (*citing* Andrews v. Shalala, 53 F.3d 1035, 1043 (9th Cir. 1995)). The ALJ can accomplish this by "setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." Reddick, supra, 157 F.3d at 725 (*citing* Magallanes v. Bowen, 881 F.2d 747, 751 (9th Cir. 1989)).

In addition, the ALJ must explain why her own interpretations, rather than those of the doctors, are correct. Reddick, supra, 157 F.3d at 725 (*citing* Embrey v. Bowen, 849 F.2d 418, 421-22 (9th Cir. 1988)). However, the ALJ "need not discuss *all* evidence presented." Vincent on Behalf of Vincent v. Heckler, 739 F.2d 1393, 1394-95 (9th Cir. 1984) (per curiam). The ALJ must only explain why "significant probative evidence has been rejected." Id. (*quoting* Cotter v. Harris, 642 F.2d 700, 706-07 (3d Cir. 1981)). According to Social Security Ruling ("SSR") 96-8p, a residual functional capacity (RFC) assessment by the ALJ "must always consider and address medical source opinions. If the RFC assessment conflicts with an opinion from a medical source, the adjudicator must explain why the opinion was not adopted." SSR 96-8p, 1996 SSR LEXIS 5 at *20.

A.  Dr. Shane Dunaway, M.D., ("Dr. Dunaway"), treating physician

Dr. Dunaway treated plaintiff from at least July 1, 2004 through November 29, 2006 (see Tr. 291-302, 350-62). On July 1, 2004, Dr. Dunaway diagnosed plaintiff with depression and prescribed Zoloft (Tr. 302). On November 9, 2004, Dr. Dunaway completed a physical evaluation and provided explicit assessments concerning the degree of interference with plaintiff's ability to perform basic work-related activities (Tr. 296-99). He assessed that plaintiff had experienced "only mild improvement with meds" (Tr. 297). Dr. Dunaway also diagnosed plaintiff with depression/anger and assessed that these impairments markedly interfered with plaintiff's ability to communicate and to understand or follow directions (Tr. 298). Dr. Dunaway also diagnosed plaintiff with hypertension and assessed that this impairment moderately impaired plaintiff's ability to lift, to handle objects and to carry objects (id.). Dr. Dunaway noted that plaintiff's problems were primarily psychiatric and that he was "not very well controlled on current meds" (Tr. 299).

On December 8, 2004, after plaintiff told Dr. Dunaway that he had been hearing voices for years, Dr. Dunaway diagnosed plaintiff with schizophrenia, concluding that plaintiff's "anger and problems dealing with other people now make more sense," and changed plaintiff's medications (Tr. 294).

The ALJ did not discuss Dr. Dunaway's functional assessment of November 9, 2004 and did not explicitly state what weight was given to Dr. Dunaway's opinion. The ALJ failed to account in his RFC for the marked limitations on plaintiff's ability to communicate and to understand or follow directions, which Dr. Dunaway opined that

plaintiff suffered from (see Tr. 24, 27, 298). When an ALJ's "RFC assessment conflicts with an opinion from a medical source," the ALJ "must explain why" the medical opinion was not adopted. See SSR 96-8p, 1996 SSR LEXIS 5 at *20. The ALJ's failure to do so was legal error.

B.  Dr. Lawrence H. Moore, Ph.D. ("Dr. Moore"), examining physician

The ALJ asserted in his written decision that Dr. Moore concluded that plaintiff's "primary mental health disorder is Antisocial Personality Disorder secondary to cannabis and opiate abuse" (Tr. 21 (*citing* Tr. 278)). However, Dr. Moore actually made the opposite conclusion: "cannabis and opiate use appears to be secondary to his personality and other emotional difficulties" (Tr. 278). This conclusion by Dr. Moore was repeated elsewhere in his May 7, 2004 report: "Substance use appears to be secondary to longstanding personality and emotional disturbance" (Tr. 274). Dr. Moore also noted that plaintiff's drug use was "symptomatic of personality disturbance" (Tr. 275). When assessing plaintiff's functional limitations, Dr. Moore again noted that plaintiff's cognitive limitations were not likely to be the result of alcohol or drug abuse (id.). The ALJ's assertion that Dr. Moore concluded that plaintiff's "primary mental health disorder is Antisocial Personality Disorder secondary to cannabis and opiate abuse" is a finding by the ALJ without substantial evidence in the record (see Tr. 21).

There is another reason that the ALJ's characterization of Dr. Moore's opinion "that the claimant's primary mental health disorder is Antisocial Personality Disorder" is

inaccurate and incomplete. This is demonstrated best by a quote of the entire relevant section of Dr. Moore's assessment:

> Results of the current evaluation suggest the presence of a primary antisocial personality disorder, however, this diagnosis is offered on a provisional basis in light of the fact that a fully comprehensive history is unavailable and no formal testing was pursued. There is also evidence of an unspecified depressive disorder as well as the presence of an obsessive-compulsive disorder.

(Tr. 278).

Dr. Moore diagnosed plaintiff not only with antisocial personality disorder (provisional), but also, he diagnosed plaintiff with Obsessive-Compulsive Disorder and Depressive Disorder, NOS (Tr. 274). He opined that plaintiff suffered from moderate limitations in his ability to perform during a normal work day, due to his depressed mood, verbal expression of anxiety or fear, expression of anger, social withdrawal, physical complaints and on plaintiff's global illness, based on the intensity and pervasiveness of all symptoms and impairments of functioning (id.).

Dr. Moore also concluded that plaintiff suffered from functional limitations in his ability to perform on a normal day to day work basis (see Tr. 275). Specifically, Dr. Moore assessed that plaintiff suffered from moderate functional limitations in his ability to exercise judgment and make decisions (Tr. 275). Dr. Moore also opined that plaintiff suffered from marked limitations in his ability to relate appropriately to co-workers and supervisors; to interact appropriately in public contacts; to respond appropriately to and tolerate the pressures and expectations of a normal work setting; and to control physical or motor movements and maintain appropriate behavior (id.). Dr. Moore also concluded

that plaintiff "has difficulty in his ability to interact socially as a result of personality and emotional factors" (see Tr. 278).

The ALJ failed to discuss the weight given to Dr. Moore's opinion and also did not account for all of plaintiff's limitations as assessed by Dr. Moore when determining plaintiff's RFC (see Tr. 24, 27). Because the ALJ's RFC was inconsistent with the assessment of functional limitations by Dr. Moore, the ALJ was required to explain why Dr. Moore's opinion was not adopted. See SSR 96-8p, 1996 SSR LEXIS 5 at *20. Again, the failure by the ALJ to do so properly here was legal error. See id.

For the reasons discussed and based on the relevant record, the Court concludes that the ALJ's assessment of Dr. Moore's opinion was not based on substantial evidence in the record.

C. Dr. Scott T. Alvord, Psy.D. ("Dr. Alvord"), examining psychologist

Dr. Alvord examined plaintiff in July of 2007 at the request of Washington State DDS and concluded that plaintiff had marked limitations in his capacity to interact appropriately with co-workers, supervisors and the general public (see Tr. 27 (citing 423-30); see also Tr. 433). The ALJ gave "no weight" to the comprehensive evaluation by Dr. Alvord because the ALJ concluded that Dr. Alvord "relied entirely on the claimant's subjective claims" (Tr. 27). The ALJ found that some of plaintiff's claims were "cancelled out by the claimant's motivation for secondary gain and poor effort, plus the claimant's lack of credibility" (id.). This conclusion, as well, is not supported by substantial evidence in the record.

Dr. Alvord examined and evaluated plaintiff on September 12, 2007 (Tr. 423-34). He conducted a mental status examination and also tested plaintiff's abilities with the Minnesota Multiphasic Personality Inventory (MMPI), Wechsler Adult Intelligence Scale (WAIS), Trail Making Test, Test of Memory Malingering and Rey 15-Item Visual Memory Test (see Tr. 423). Dr. Alvord assessed that plaintiff gave "adequate effort during testing" and indicated that "Neither validity measures (Rey 15-Item Visual Memory Test or the TOMM) suggested poor effort or intentionally feigned neurocognitive symptoms" (Tr. 425). However, he also indicated that the "MMPI II was invalid as a result of unusually high endorsement of odd or bizarre items [and] [i]t is noted that he likely downplayed his substance use/abuse" (id.). Subsequently in his report, Dr. Alvord opined that it was his "clinical opinion that secondary gain issues inherent in an evaluation of this nature motivated [plaintiff] to exaggerate his level of distress" (Tr. 429).

When assessing plaintiff's thought content, Dr. Alvord indicated that plaintiff "did not demonstrate behavioral evidence associated with attention to internal stimuli, [however] he did acknowledge hearing voices" (Tr. 426). Dr. Alvord further demonstrated that he was distinguishing between plaintiff's subjective statements and his own objective observations: "It was difficult upon further questioning to determine if he truly is suffering from a psychotic disorder" (id.).

Regarding plaintiff's attention and concentration, Dr. Alvord indicated that plaintiff "recited 4 digits forward and 3 digits backward suggesting below average attention/concentration" (id.). He also noted plaintiff's errors and difficulties with

mathematics (Tr. 426, 427). When discussing his diagnostic impressions, Dr. Alvord indicated that it was "conceivable that [plaintiff] is suffering from a learning disorder and results of the current evaluation suggest that he is suffering from borderline intellectual functioning" (Tr. 429). Dr. Alvord assessed that plaintiff likely was "suffering from a depressive disorder, which may or may not be longstanding" (id.). He indicated that he thought that "the diagnosis of Dysthymia is probably appropriate" (id.).

Dr. Alvord assessed that it was "suspected, though not confirmed that [plaintiff] continues to abuse substances" (id.). Dr. Alvord further assessed that it appeared plaintiff suffered from "very limited insight and judgment, poor impulse control, a history of anger issues and paranoia" (id.). He assessed that it was "difficult to provide a conclusive statement regarding [plaintiff's] ability to find or maintain employment" (Tr. 429-30). Dr. Alvord continued that given plaintiff's occupational limitations in the past, it was "unlikely that he will have occupational success without retraining and/or treatment of depressive symptoms. Given the myriad of factors contributing to his functioning, maladaptive personality traits and suspected substance abuse, his prognosis is poor" (Tr. 430).

Dr. Alvord assessed that plaintiff was mildly limited in his ability to understand and remember simple instructions and to carry out simple instructions (Tr. 432). He also assessed that plaintiff was moderately limited in his ability to make judgments on simple work-related decisions; to understand and remember complex instructions; carry out complex instructions; and, to have the ability to make judgments on complex work-related decisions (id.). Finally, Dr. Alvord indicated that plaintiff was markedly limited in

his ability to respond appropriately to usual work situations and to changes in a routing work setting, as well as markedly limited in his ability to interact appropriately with the public, supervisors and co-workers (Tr. 433).

There are a number of problems with the ALJ's assessment of Dr. Alvord's opinions.

First, there is not substantial evidence in the record to support the ALJ's conclusion that Dr. Alvord "relied entirely on the claimant's subjective claims" (see Tr. 27). On the contrary, as discussed above, Dr. Alvord performed a mental status examination and interpreted the results of many psychological tests (see Tr. 423-34). In addition, Dr. Alvord clearly was distinguishing between plaintiff's subjective complaints and his own objective observations (see Tr. 426.) As discussed above, the record contains multiple indications of Dr. Alvord's questioning of plaintiff's claims, such as his questioning whether or not plaintiff was truthful regarding the use of drugs, his "clinical opinion that secondary gain issues inherent in an evaluation of this nature motivated [plaintiff] to exaggerate his level of distress" (see Tr. 429) and his observation that it was "difficult upon further questioning to determine if he truly is suffering from a psychotic disorder" (see Tr. 426). Furthermore, Dr. Alvord indicated specifically that his assessment was supported by testing in addition to the clinical interview (Tr. 433).

Second, Dr. Alvord was aware of plaintiff's motivation for secondary gain, yet nevertheless indicated his assessments regarding plaintiff's functional impairments (see Tr. 429). The ALJ must demonstrate why his own interpretations, rather than those of the doctors, are correct. See Reddick, supra, 157 F.3d at 725. Here, the ALJ failed to do so.

Regarding the ALJ's favoring his own interpretation of the test results over that of the doctor, the Court further notes that "experienced clinicians attend to detail and subtlety in behavior, such as the affect accompanying thought or ideas, the significance of gesture or mannerism, and the unspoken message of conversation. The Mental Status Examination allows the organization, completion and communication of these observations." Paula T. Trzepacz and Robert W. Baker, The Psychiatric Mental Status Examination 3 (Oxford University Press 1993). "Like the physical examination, the Mental Status Examination is termed the *objective* portion of the patient evaluation." Id. at 4 (emphasis in original).

The Mental Status Examination generally is conducted by medical professionals skilled and experienced in psychology and mental health. Although "anyone can have a conversation with a patient, [] appropriate knowledge, vocabulary and skills can elevate the clinician's 'conversation' to a 'mental status examination.'" Trzepacz, supra, The Psychiatric Mental Status Examination 3. A mental health professional is trained to observe patients for signs of their mental health not rendered obvious by the patient's subjective reports, in part because the patient's self-reported history is "biased by their understanding, experiences, intellect and personality" (id. at 4), and, in part, because it is not uncommon for a person suffering from a mental illness to be unaware that his "condition reflects a potentially serious mental illness." Van Nguyen v. Chater, 100 F.3d 1462, 1465 (9th Cir. 1996).

Finally, the ALJ's determination to give "no weight" to Dr. Alvord's opinion was based, in part, on the ALJ's characterization of plaintiff's "poor effort" (Tr. 27). However, as mentioned previously, although Dr. Alvord opined that plaintiff may have been exaggerating his level of psychological distress (Tr. 429), Dr. Alvord specifically indicated that plaintiff gave "adequate effort during testing" (Tr. 425). Dr. Alvord also indicated that "[n]either validity measures (Rey 15-Item Visual Memory Test or the TOMM) suggested poor effort or intentionally feigned neurocognitive symptoms" (Tr. 425). For these reasons, the Court concludes that the ALJ's implicit finding that plaintiff gave "poor effort" during cognitive testing is not based on substantial evidence in the record.

For the discussed reasons and based on the relevant record, the Court concludes that the ALJ did not give legitimate reasons based on substantial evidence in the record to give no weight to the opinions of Dr. Alvord, including Dr. Alvord's specific functional assessments. See Lester, supra, 81 F.3d at 830-31.

The ALJ failed to evaluate properly much of the medical evidence from acceptable medical sources. Therefore, the Court concludes that this matter should be remanded in order to allow for a proper review of the medical evidence as a whole.

II.     The ALJ erred in his review of some of the lay testimony.

Pursuant to the relevant federal regulations, in addition to "acceptable medical sources," that is, sources "who can provide evidence to establish an impairment," see 20 C.F.R. § 404.1513 (a), there are "other sources," such as friends and family members,

who are defined as "other non-medical sources," <u>see</u> 20 C.F.R. § 404.1513 (d)(4), and "other sources" such as nurse practitioners and naturopaths, who are considered other medical sources, <u>see</u> 20 C.F.R. § 404.1513 (d)(1). <u>See also</u> <u>Turner v. Comm'r of Soc. Sec.</u>, 613 F.3d 1217, 1223-24 (9th Cir. 2010) (*citing* 20 C.F.R. § 404.1513(a), (d), (d)(3)). "Other sources" specifically delineated in the relevant federal regulations also include public and private "social welfare agency personnel." <u>See</u> 20 C.F.R. § 404.1513(d)(3).

An ALJ may disregard opinion evidence provided by "other sources," characterized by the Ninth Circuit as lay testimony, "if the ALJ 'gives reasons germane to each witness for doing so." <u>Turner</u>, <u>supra</u>, 613 F.3d at 1224 (*citing* <u>Lewis v. Apfel</u>, 236 F.3d 503, 511 (9th Cir. 2001)); <u>see also</u> <u>Van Nguyen v. Chater</u>, 100 F.3d 1462, 1467 (9th Cir. 1996). This is because "[i]n determining whether a claimant is disabled, an ALJ must consider lay witness testimony concerning a claimant's ability to work." <u>Stout v. Commissioner, Social Security Administration</u>, 454 F.3d 1050, 1053 (9th Cir. 2006) (*citing* <u>Dodrill v. Shalala</u>, 12 F.3d 915, 919 (9th Cir. 1993)).

Recently, the Ninth Circuit characterized lay witness testimony as "competent evidence," again concluding that in order for such evidence to be disregarded, "the ALJ must provide 'reasons that are germane to each witness.'" <u>Bruce v. Astrue</u>, 557 F.3d 1113, 1115 (9th Cir. 2009) (*quoting* <u>Van Nguyen</u>, <u>supra</u>, 100 F.3d at 1467). In this recent Ninth Circuit case, the court noted that an ALJ may not discredit "lay testimony as not supported by medical evidence in the record." <u>Bruce</u>, 557 F.3d at 1116 (*citing* <u>Smolen v. Chater</u>, 80 F.3d 1273, 1289 (9th Cir. 1996)).

a. D. Osborn, PA-C, ("Osborn PA-C"), examining certified physician assistant.

On May 24, 2004, Osborn PA-C examined plaintiff, conducted a physical evaluation and provided assessments of plaintiff's functional limitations (see Tr. 283-90). These evaluation and assessments were co-signed by Dr. D. Marsh, M.D. (see Tr. 286). Osborn PA-C indicated diagnoses of depression, chronic lumbar pain, chronic neck pain, poor dentition and hypertension (see Tr. 285). Osborn PA-C also assessed that plaintiff's chronic lumbar pain resulted in marked impairment in plaintiff's ability to sit, stand, walk, lift, handle and carry; that plaintiff's chronic neck pain resulted in a moderate limitation in plaintiff's ability to perform these same basic work-related activities; and that plaintiff's depression resulted in a moderate limitation in plaintiff's ability to communicate and understand or follow directions (see id.).

The ALJ failed to discuss the examination and assessments by Osborn PA-C. However, according to the Ninth Circuit, "[i]n determining whether a claimant is disabled, an ALJ must consider lay witness testimony concerning a claimant's ability to work." Stout, supra, 454 F.3d at 1053 (citing Dodrill, supra, 12 F.3d at 919). In addition, "where the ALJ's error lies in a failure to properly discuss competent lay testimony favorable to the claimant, a reviewing court cannot consider the error harmless unless it can confidently conclude that no reasonable ALJ, when fully crediting the testimony, could have reached a different disability determination." Stout, supra, 454 F.3d at 1056 (reviewing cases). Because the Court cannot so conclude with confidence, the ALJ's legal error here was not harmless. See id.

b.  Ms. Lisa Mitchell, Licensed Social Worker ("Ms. Mitchell")

Ms. Mitchell evaluated plaintiff on May 4, 2005 (see Tr. 410-22). She conducted a mental status examination (see Tr. 420). In her diagnostic impressions, she indicated her assessment that plaintiff met the "criteria for Psychotic disorder, NOS [not otherwise specified]" (Tr. 411). However, in support of this assessment, in this section she listed only plaintiff's subjective complaints (see id.). Because of her finding that plaintiff reported symptoms that met criteria for Psychotic disorder, she found that he was eligible for services (see id.). She also opined that he suffered from obsessive compulsive disorder (id.). Ms. Mitchell rated plaintiff's Global Assessment of Functioning ("GAF") at 30 (Tr. 419).

The ALJ discussed Ms. Mitchell's evaluation of plaintiff (Tr. 22). He found that her opinion regarding plaintiff's mental health impairment and GAF score were not consistent with or supported by the medical evidence of record (id.). He also correctly noted that she was not an acceptable medical source (id.). The ALJ also noted that her assessment was not co-signed by an acceptable medical source (id.). The ALJ found that while her counseling notes reflected substance abuse as an ongoing risk issue, she failed to include any indication of this in her May 4, 2005 assessment (id.).The ALJ also found that Ms. Mitchell "continually references reliance on the claimant's subjective allegations" (id.). The ALJ also found that her report that plaintiff was hearing voices was contradicted by an indication in the record that plaintiff had recently, in April, 2005, indicated that "there are 'no more voices'" (id.; see also Tr. 371). The ALJ gave Ms. Mitchell's opinions no weight (id.).

In order for lay evidence such as that provided by Ms. Mitchell to be disregarded, "the ALJ must provide 'reasons that are germane to each witness.'" <u>Bruce</u>, <u>supra</u>, 557 F.3d at 1115 (*quoting* <u>Van Nguyen</u>, <u>supra</u>, 100 F.3d at 1467). Although the assessment of Ms. Mitchell is consistent with some aspects of the record and is supported by some medical evidence in the record, the ALJ here properly provided germane reasons supported by substantial evidence in the record to give her opinions no weight. Therefore, the Court concludes that the ALJ did not commit legal error in the consideration of Ms. Mitchell's opinion. <u>See</u> <u>Bruce</u>, <u>supra</u>, 557 F.3d at 1115.

   c. Ms. Linda Van Fleet ("Ms. Van Fleet") and Ms. Kathy Durdel ("Ms. Durdel")

Ms. Van Fleet is a friend of plaintiff who submitted a lay witness statement on September 26, 2004 (<u>see</u> Tr. 111-19). She indicated that she had known plaintiff for at least two years (Tr. 111). Ms. Van Fleet indicated that plaintiff had a lot of pain and was losing the mental capacity for daily life (Tr. 111,114).

Ms. Durdel is a friend of plaintiff who submitted a lay witness statement on September 26, 2004 (<u>see</u> Tr. 102-10). She indicated that she had known plaintiff for two years (Tr. 102). She opined that he was in pain, that walking was difficult for him and that he was depressed with extreme paranoia (Tr. 103, 107).

The ALJ gave the statements by Ms. Van Fleet and by Ms. Durdel "some weight limited to their reported, non-medical observations, which are limited to only a couple hours a week and they do not acknowledge major factors, such as the claimant's continued cigarette and marijuana smoking, or his failure to exercise and lose weight as

instructed by his doctors" (Tr. 26). The ALJ noted that neither Ms. Van Fleet nor Ms. Durdel reported any knowledge or observations of plaintiff's drug and alcohol use (id.).

Although it is not clear how plaintiff's friends would have knowledge of the instructions plaintiff was receiving from his doctors, the ALJ has provided germane reasons for giving only some weight to their opinions, including that they had limited interaction with plaintiff and their failure to acknowledge or be aware of plaintiff's cigarette and marijuana smoking. See Bruce, supra, 557 F.3d at 1115. Therefore, the ALJ's evaluation of these lay statements was not legal error.

III.  Plaintiff's credibility should be assessed anew following remand.

The Court already has concluded that the ALJ failed to evaluate properly some of the medical evidence from acceptable medical sources as well as the assessment by Osborn PA-C, see supra, sections I, II. The ALJ's failure to assess evidence from medical sources properly, particularly regarding plaintiff's mental impairments, appears to have influenced the ALJ's assessment of plaintiff's credibility (see Tr.24-26). In addition, the Court notes that the ALJ made errors during the assessment of plaintiff's credibility (see id.). For example, the ALJ relied on his conclusion that "the claimant consistently denied any drug and alcohol abuse to all doctors, except Dr. Moore, in May 2004" (Tr. 25). However, the record reflects multiple references of plaintiff telling his providers about his use of substances, including marijuana. On July 1, 2004 plaintiff indicated to Dr. Dunaway that he has used marijuana (see Tr. 302); on May 4, 2005 plaintiff reported a history of using drugs and alcohol "to cope" and admitted currently using marijuana (Tr.

410); on July 24, 2007, plaintiff admitted use of marijuana to Dr. David Boston, M.D. (Tr. 441); and, on September 12, 2007, plaintiff discussed his periodic use of marijuana and told Dr. Alvord that he didn't view it as a drug (Tr. 425). The ALJ also relied on the finding that plaintiff had tested positive for marijuana and benzodiazepine more than once (see Tr. 25), even though defendant admits that this finding was erroneous (see Response, ECF No. 25, p. 9).

The Court already has concluded that this matter should be remanded in order to allow for a proper review of the evidence from medical sources and the record as a whole. For these reasons, and because of the discussed errors in the ALJ's assessment of plaintiff's credibility, the Court concludes that following remand, the ALJ assigned to this matter must reassess plaintiff's credibility anew.

IV.     Plaintiff's severe impairments and functional limitations should be assessed anew following remand of this matter.

The Court already has concluded that the ALJ failed to evaluate properly the medical evidence from acceptable medical sources as well as the assessment by Osborn PA-C, see supra, sections I, II. In addition, the Court noted errors committed by the ALJ in his assessment of plaintiff's credibility. Similarly, the ALJ erred in his assessment of plaintiff's limitations caused by severe and non-severe impairments, as well as in his assessments of which impairments were severe, including plaintiff's alleged back pain, hallucinations, paranoia, carpal tunnel syndrome and bilateral epicondylitis in his elbows. For example, when assessing plaintiff's back pain, the ALJ found that plaintiff never had

any x-rays done (Tr. 20). However, the record reveals "three views" of plaintiff's lumbar spine, showing "degenerative changes" (Tr. 466), and "three views" of plaintiff's thoracic spine (Tr. 467). The ALJ's finding to the contrary is not supported by substantial evidence in the record.

The ALJ's finding regarding plaintiff's hallucinations and paranoia and his finding that plaintiff's schizophrenia caused no limitations in plaintiff's ability to perform work activity should be reassessed following a proper review of the medical evidence.

The ALJ also failed to acknowledge significant, probative evidence when determining that plaintiff's carpal tunnel syndrome and bilateral epicondylitis in his elbows were not severe impairments (see Tr. 190-91, 209-12, 220, 334-39).

This matter should be remanded for a proper review of the evidence from medical sources as well as plaintiff's credibility. For this reason, and for the reasons discussed in this section, see supra, section IV, the ALJ assigned to this matter following remand should assess anew the issue of plaintiff's severe impairments and the functional limitations caused by plaintiff's severe and non-severe impairments.

V.     The ALJ's reliance on vocational expert testimony was not proper, given the failure to review properly the evidence from medical sources.

The Court already has concluded that the ALJ failed to evaluate properly the evidence from acceptable medical sources as well as the assessment by Osborn PA-C. The ALJ's credibility assessment also was based, at least in part, on this faulty assessment of the medical evidence and on errors committed during the ALJ's review of plaintiff's credibility. Therefore, it is likely that the hypothetical presented to the

vocational expert (see Tr. 529-30), on which the ALJ relied to find that plaintiff was not disabled, did not accurately reflect all of plaintiff's functional limitations.

The ALJ assigned to this matter following remand should, if necessary based on the sequential disability evaluation, reassess what limitations to include in plaintiff's residual functional capacity as presented to the vocational expert. The ALJ should present a complete hypothetical to the vocational expert and should confirm consistency with the Dictionary of Occupational Titles.

<u>CONCLUSION</u>

The ALJ failed to evaluate properly the evidence from acceptable medical sources and the assessment by Certified Physician Assistant Osborn. The ALJ also committed errors in his assessment of plaintiff's credibility as well as in the assessment of plaintiff's severe impairments and his functional limitations.

Based on these reasons and the relevant record, the undersigned recommends that this matter be **REVERSED** and **REMANDED** to the administration for further consideration pursuant to sentence four of 42 U.S.C. § 405(g). **JUDGMENT** should be for **PLAINTIFF** and the case should be closed.

Pursuant to 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(b), the parties shall have fourteen (14) days from service of this Report to file written objections. See also Fed. R. Civ. P. 6. Failure to file objections will result in a waiver of those objections for purposes of de novo review by the district judge. See 28 U.S.C. § 636(b)(1)(C).

Accommodating the time limit imposed by Rule 72(b), the clerk is directed to set the matter for consideration on November 18, 2011, as noted in the caption.

Dated this 28th day of October, 2011.


J. Richard Creatura
United States Magistrate Judge